KUENZI, Appellant, vs. RADLOFF and another, Respondents.

*October 14—November 16, 1948.*

For the appellant there were briefs by *Skinner & Thauer* of Watertown, and oral argument by *Wallace Thauer*.

For the respondents there was a brief by *John J. Nugent* and *Hooker & Wagner,* all of Waupun, and oral argument by *Mr. W. A. Wagner* and *Mr. Nugent.*

ROSENBERRY, C. J.   The plaintiff is licensed under the provisions of sec. 101.31, Stats., as a professional engineer. He has had forty years' experience in designing buildings, and was licensed in 1932.

In December, 1945, the defendants were considering the erection of a building in the city of Waupun to be occupied by bowling alleys and a tavern.   The defendant Radloff consulted the plaintiff, and as result of this consultation the plaintiff wrote the following letter:

"Dec. 29, 1945

"Mr. Harold Radloff
"Waupun, Wisconsin

"Dear Sir:
"I wish to confirm our conversation of some time ago wherein I named you a fee of 3% of the estimated value of the project for services in making up plans for the construction of a proposed bowling alley to be built at Waupun, Wis.

This also includes the services of securing full approval of the Industrial Commission.

> "Respectfully submitted,
> "Yours truly,
> "Arthur Kuenzi.

"Accepted
"O. A. Krebsbach
"H. Radloff."

Upon receipt of the signed proposal from the defendants the plaintiff proceeded with the design and preparation of the plans for the proposed building. The defendants from time to time during the preparation of the plans consulted with the plaintiff and his associates and changes were made in accordance with the suggestions made by the defendants. The plans were completed early in March, 1946, and were presented to the industrial commission and duly approved by it and then promptly delivered to the defendant Radloff.

On April 11, 1946, an application for the allocation of construction materials, to which application was attached a copy of the plans, was made on behalf of Radloff and Krebsbach to the civilian production administration. A second application to the civilian production administration, signed by both defendants, was submitted to the civilian production administration on April 25, 1946. In each of these applications the cost of the structure, including fixtures and building service, is stated to be $80,000. The following statement was made in the application:

"A site has been obtained and an architect engaged for the construction of such building and the plan submitted to a contractor who has in turn ordered various materials for the construction thereof. All of said obligations were incurred and commitments made previous to Mar. 26, 1946."

Both applications were denied on May 1, 1946.

On April 28, 1946, the plaintiff sent to the defendant Radloff an invoice for $1,350 based upon the estimated value

of the building of $45,000. The plaintiff also demanded payment from the defendant Krebsbach before the commencement of this action. The plaintiff received the following letter from the defendant Radloff:

"Mon. morning

"Dear Sir:

"Sorry to keep you waiting but we are still working through Washington to get started building.

"We will make a payment to you just as quickly as possible.

"Milan Nickerson one of our partners dropped out, didn't want his money laying idle so he went into the cement-block business.

"We are picking out another good partner and will get in touch with you or write when we have the partners lined up.

"This Nickerson was undecided for some time and that's why we didn't send you any money, until we have the other party lined up.

"How is the steel coming. We will have to pay you and have it on hand when it comes and wait for the permit to start to build. You said in your last letter a quite a while ago that the steel would be here within a couple of weeks.

"Yours very truly,
"H. Radloff.

"P. S. Keep this under your hat about a 3rd party and if you should happen to know of someone who has 15 or 20 thousand and wants to put it in a good business of a bowling alley and tavern let us know."

The letter was undated; neither the plaintiff nor the defendant Radloff can fix the date on which it was sent. Evidently it was sent after the receipt of the invoice from the plaintiff because payment is promised.

Upon notice of the denial of their application by the civilian production administration on May 1, 1946, the defendants abandoned the project and the building for which the plans were prepared has never been erected.

Upon these facts it appears as a matter of law that the plaintiff had a contract with the defendants for the making of plans for the construction of the proposed building; that he

proceeded to carry out his part of the contract by preparing the plans, procuring their approval by the industrial commission, and delivering them to the defendants; that they were accepted by the defendants and used by them in their efforts to procure a priority order from the civilian production administration.

The defendants seek to defeat the plaintiff's claim upon a number of grounds. We shall first consider the contention of the defendants that there is a defect of parties plaintiff. While there was no allegation in the answer of either defendant to the effect that there was a defect of parties plaintiff, an attempt was made upon the trial to establish the fact that the plaintiff was a member of a partnership and as such could not maintain an action upon the contract entered into between the plaintiff and the defendants. The contention of the defendants is that the other partners were necessary parties plaintiff. In his testimony the plaintiff made statements to the effect that he had partners and that the arrangement with his associates was a partnership. Other witnesses were called and from the testimony introduced it is clear that whatever arrangement the plaintiff had with other parties, who performed some services in connection with the preparation of the plans, they were not partners. Sec. 123.03 (1), Stats., defines partnership as follows:

"A partnership is an association of two or more persons to carry on as co-owners a business for profit."

It is said in *Montello Granite Co. v. Industrial Comm.* 227 Wis. 170, 278 N. W. 391, that what parties call themselves is not conclusive on the question of the existence of a partnership. In order to constitute an element of partnership the "profits" in which a partner is to share must be real profits, not wages. *Bartelt v. Smith,* 145 Wis. 31, 129 N. W. 782; *Smith v. Starkey,* 203 Wis. 56, 233 N. W. 576; *Etscheid v. Tiefenthaler,* 172 Wis. 273, 177 N. W. 887.

It appears from the evidence that the plaintiff makes contracts for the preparation of plans for buildings. That thereafter he is aided by some members of what might be referred to as a panel. Those who assist him are paid for their services whether the plaintiff collects on his contract or not. In this case the plaintiff had already, before the commencement of this action, made some payments. It does not appear that the associates share in the losses or that their approval is necessary for the plaintiff to enter into a contract, nor are they bound to render service to the plaintiff.

Plaintiff was asked if he had an agreement with his associates. He answered, "The agreement is if they want anything I am willing to pay them for it. They generally give me a bill for it."

"*Q*. What is the bill based on? *A*. Whatever they may base it on. That is up to them.

"*Q*. Well you pay them whatever they ask for, is that right? *A*. That's right.

"*Q*. And that is what you will do in this case regardless of whether you collect? *A*. That's right."

He further stated, "The men that worked on these plans for me or with me have an interest in recovering this money to the extent that they may bill me for it regardless of whether I collect it or not."

It is evident that what the plaintiff referred to as a partnership is some kind of a loose association which does not amount to a partnership.

Robert A. Phillips was the person who rendered the most service in the preparation of the plans. He testified:

"I'm an independent operator. I don't work for Mr. Kuenzi. I go and come as I please. And when I am through with a job Mr. Kuenzi and I get our heads together and—or he has already arrived at the cost and if that is satisfactory to me I submit my bill to him."

The arrangement between plaintiff and his associates resembles more closely a fee-splitting operation than any other relation. Despite what the plaintiff said, the evidence does not establish a partnership. The necessary elements of a partnership relation are not present in this case. Under the undisputed facts in this case the plaintiff could properly maintain this action against the defendants.

It is also contended that nonlicensed persons cannot render service to a licensed professional engineer for which he can collect compensation. Sec. 101.31 (7), Stats., provides:

"(7) *Exempt persons.* The following persons shall be exempted from registration under the provisions of this section, to wit: . . . (b) An employee of a person holding a certificate of registration in this state who is engaged in the practice of the profession of architecture or of professional engineering; . . . provided, such practice does not include responsible charge of architecture or professional engineering practice as defined in this section."

The plaintiff testified:

"In preparing these plans I did some design work but not the actual drawing. Mr. Phillips did the drawing. Mr. Phillips is not licensed as an architect, but under the law he can work on such plans and specifications under a licensed man as an associate. I would have to assume full responsibility. I put in forty-two hours actual time on these plans."

It is considered that the plaintiff complied with the provisions of the statutes relating to the practice of professional engineering.

It will be observed that the contract provided that the fee should be three per cent of the estimated value of the project for services in making up plans for the construction of the proposed bowling alley. The defendants placed a great deal of emphasis on the term "estimated value." The defendants made the claim, and the court sustained it, that this meant the

value of the building after its erection. In so holding it is considered that the trial court was in error. The basis upon which plaintiff's fee was to be computed was the estimated value of the project, not of a building which might never be erected. In its opinion the trial court said:

"The court refused to allow this testimony as to cost due to the fact that the letter which comprised the basis for the case said value of the project as the basis rather than the cost of construction,"

and excluded all testimony as to cost except that of plaintiff, and restricted the evidence to what the building would be worth upon the proposed site after it was constructed. Just how the value of a building which has never been constructed can be determined does not appear. "Value" in the sense in which the trial court used the term, means market value, what the property could be sold for after the building was erected. Even if that were the test, evidence of cost would be relevant and material, but it is not the test in this case.

It is considered that this case is ruled by *Burroughs v. Joint School Dist.* 155 Wis. 426, 144 N. W. 977. It was there held that if when the term "value" is applied to a particular contract, or conditions growing out of it, it leads to results clearly not contemplated by the contract read as a whole, and it is susceptible of another meaning which harmonizes with all the provisions of the contract, such other meaning should be given to it. In that case a building contract provided for payment in each month of a sum equal to ninety per cent of the value of the work done and material furnished during the preceding month, as assessed by the architects. In that case the word "value" was construed to mean not market but contract value. It is considered that in this case the term "estimated value" of the project referred to the estimated cost of the material and services necessary to complete the building according to the plans. There is not a scintilla of evidence in this case that the plaintiff was to wait for his compensation until the completion

of the building and an appraisal thereof. The idea that the base upon which the fee was to be computed can be established by the sale of a mythical building owned by a mythical owner, and sold to a mythical buyer, is too elusive and indefinite a standard to apply to practical affairs. So in this case we hold that the term "estimated value of the project" means the estimated cost of completing it.

Upon this point the plaintiff testified as follows:

"I made an estimate of $45,000 as being the value of this building, which is the same amount as the estimated cost. . . . My estimate was the sum of $54,000, as I recall it. I made a charge against the defendants based on $45,000 and charged three per cent of that amount or $1,350."

. Two witnesses were called on behalf of the defendants who testified that the value of the completed building would be fifteen to twenty thousand dollars, around twenty thousand dollars. This was on the theory that the building when completed would have to be rebuilt if used for any other purpose than a bowling alley. One witness testified, "You would have quite a job getting $20,000 for it because it would have to be tore apart and fixed over for something else." This sort of evidence comes far short of establishing the estimated value of a project.

Considerable evidence was received in regard to the income-tax returns of the plaintiff. So far as we are able to ascertain this evidence was immaterial. Whether the proper income-tax returns were made or not is a concern of the department of taxation, and has no relevancy on the question raised in this case. It was introduced in an effort to establish that the real plaintiff was a copartnership, a matter which has already been considered.

It is considered that the plaintiff having fully performed the contract between the parties, including the procurement of the indorsement of the industrial commission, and defendants having accepted and acted upon the plans as delivered to

them, that the plaintiff is entitled to compensation on the basis of the lowest estimated cost of the project appearing in the evidence, to wit, the sum of $45,000, with interest and costs.

*By the Court.*—The judgment appealed from is reversed, and the cause is remanded with directions to the trial court to enter judgment for the plaintiff as indicated in the opinion.

BROADFOOT, J., took no part.