## WILL OF GREILING: GREILING, Appellant, vs. GENZ, Trustee, Respondent.

*May 4—June 2, 1953.*

For the appellant there was a brief by *Jones & Petersen* of Milwaukee, and oral argument by *Henry G. Petersen, Jr.*

For the respondent there was a brief by *Orth, Riedl & Orth* of Milwaukee, and oral argument by *Charles A. Riedl.*

CURRIE, J. In *Will of Yates* (1951), 259 Wis. 263, 48 N. W. (2d) 601, this court held that a construction of the will could not be had by the trustee after a final decree had been entered and the time for appeal from such decree had expired inasmuch as the final decree constituted a construction of the will. This left unanswered the question of how to proceed in resolving any controversy arising after the entry of a final decree in an estate as to carrying out the provisions and directions of the will where the final decree is ambiguous or merely assigns the property subject to the terms of the will.

This question was resolved by our decision in *Will of Dolph* (1951), 260 Wis. 291, 50 N. W. (2d) 448. This later decision made it clear that while technically the procedure after the entry of the final decree is to request a construction of the final decree, nevertheless, resort must be had to the will and the will itself construed where the final decree is ambiguous or merely assigns the estate, or a portion thereof, in accordance with the terms of the will.

The petition of the widow in this case raises a question of construction. The final decree, because it assigned both the personalty and real estate to the trustee to be administered in accordance with the terms of the will, provides us with no answer. When we resort to the will we discover that the legal title of the entire residuary estate, real and personal, is vested in the trustee, subject to the provisions of the antenuptial agreement as modified by the postnuptial agreement. This in turn makes it necessary to construe such antenuptial and postnuptial agreements.

The pertinent provision of the antenuptial agreement is as follows:

". . . the said Reinhold Greiling does further covenant and agree, in case said marriage takes place, that in case of his death prior to the death of his said wife, that she, the said Anna Callahan [the petitioner], shall have during her widowhood, or until her death in case she does not remarry, the use, enjoyment, and income of his homestead and adjoining premises, known and described as 1543, 1547 & 1547A— S. 16th street, and 1542 S. Pearl street in the city of Milwaukee, she to keep the same in proper repair at her expense, but the personal representatives of the estate of said Reinhold Greiling to insure the buildings thereon against loss or damage by fire, and to pay the premiums therefor, and also to pay all taxes, general or special, which may be levied or assessed against said premises during said period, and she shall also have while rightfully in possession of said premises the use and enjoyment of the furniture, household goods, and equipment contained in said homestead premises."

One of the "whereas" clauses contained in the preamble of the postnuptial agreement contains the following statement:

". . . since such marriage the parties hereto have considered and discussed the terms of said antenuptial agreement and have mutually agreed to modify the same, so as to give to the second party, as the wife of the first party, in case she survives him and so long as she remains his widow, a home and a net income of one hundred ten ($110) dollars a month."

The modification which was made by the postnuptial agreement provided that the widow, after the death of the deceased, "shall be permitted to occupy rent-free his homestead premises, with furnishings and equipment, or either of his other houses or duplexes, also any summer home which he may own at the time of his demise; that she is to supervise and rent out to best advantage the remaining real estate, and collect the rents, issues, and profits thereof, make necessary or desirable improvements and repairs, pay taxes and water assessments, and fire and other insurance premiums, and each

month apply the excess on account of her allowance, and whenever such net rentals shall be less than one hundred ten ($110) dollars a month, the executor and/or trustee of his estate upon demand shall pay to her the deficiency, so that her net income shall at all times be one hundred ten ($110) dollars a month."

After the death of the deceased the widow occupied the premises at 1543 S. 16th street as her homestead, and the other three premises in the city of Milwaukee were rented out by her. The summer home mentioned in the postnuptial agreement was, with the consent of the widow, sold, and the proceeds paid over to the trustee.

The three rental properties at the time of the filing of the widow's petition for reimbursement of the $750 expended by her for improvements on the homestead, and the hearing thereon, were being rented for a total aggregate rental of $110 per month. Apparently such rental had been fixed some considerable time prior thereto so that there had been no fluctuation for some years in the gross rental income. Some of the five children of the deceased (which five children are the residuary legatees) are tenants of these rental premises.

The trial court, after the conclusion of the hearing, expressed the view that the rentals being collected might be too low and that if the widow would raise such rentals she might, over a yearly period, recoup her $750 for improvements and still receive $110 per month net rental. Apparently it was for this reason that he denied the petition "without prejudice." However, on July 11, 1951, all five of the residuary legatees signed a written statement reading in part as follows: "We . . . herewith approve the rentals as heretofore charged and fixed by Anna Greiling, widow of Reinhold Greiling, deceased." Thereafter, under date of August 23, 1951, the trial court entered an order approving the trustee's account, which provided as follows:

"It is further ordered and adjudged that all rentals heretofore received by Anna Greiling, the widow and life tenant, from the real estate of said trust estate are reasonable and were for the best interests of the trust and are hereby approved and allowed.

"It is further ordered and adjudged that the said Anna Greiling, as such widow and life tenant, in possession of the real estate of said trust estate be—and hereby is—authorized and permitted to continue collecting rents upon the same basis as heretofore until the circumstances change and/or the further order of the court."

There is nothing in the record to show any change in "circumstances" between August 23, 1951 (the date of the foregoing order), and February 26, 1952 (the date of the entry of the order denying the widow's petition for reimbursement for the $750 of improvements to the homestead), nor was any further order entered by the trial court subsequent to August 23, 1951, with respect to the rentals to be charged by the widow. None of the five residuary legatees interposed any objection to the petition by the widow for reimbursement for the $750 so expended by her. Mr. Riedl, the attorney for the trustee who appeared at the hearing, made no objection to the granting of the petition nor did he raise any question of the gross rentals being collected by the widow being too low, or that she might be chargeable with additional rentals.

From all of the foregoing, it appears that as of the time of the hearing of the widow's petition she was collecting $110 a month gross rentals. It therefore follows as a mathematical certainty that any amount expended by her for improvements would reduce her net income from rentals below the figure of $110 per month which she was to receive under the postnuptial agreement by the exact amount of such expenditure. The fact that in the future she might be able to raise rentals seems to us to be entirely beside the point.

Inasmuch as the $110 per month gross rentals which the widow was collecting, as of the date of the hearing on her

petition, had been fully approved by the afore-mentioned prior order of the court dated August 23, 1951, the order appealed from herein denying her petition "without prejudice" was an appealable order. It constituted a "final order affecting a substantial right" within the provisions of sec. 274.33 (2), Stats. It was a final determination that the widow was not entitled to be reimbursed by the trustee for such improvements on the basis of the then existing facts. The addition of the words "without prejudice" by the trial court for the purpose of indicating that the court might make some other disposition in the future under a changed fact situation did not make that which otherwise would have been a final order one which was not appealable. It is clear from the record that the order was intended to be final under the then existing facts.

If the postnuptial agreement is to be correctly construed and interpreted as providing that the widow was to receive a "net income of one hundred ten ($110) dollars a month" (quoting from the preamble of the postnuptial agreement) over and above all sums expended by her for improvements, repairs, taxes, water assessments, and insurance premiums, then it was error for the trial court not to have entered an order granting the widow's petition for reimbursement.

The dissenting opinion herein raises a question of construction as to the postnuptial agreement which was not raised in the proceedings below. The minority contend that because the provisions with respect to the widow making "desirable improvements and repairs" contained in that portion of the postnuptial agreement hereinbefore quoted appears after the semicolon following the word *"demise,"* such improvements and repairs relate only to the real estate to be rented and therefore do not include improvements and repairs to the homestead.

If in construing the postnuptial agreement we were confined only to this particular clause, we of the majority would

be inclined to agree with the minority's interpretation. However, it is a cardinal principle of construction that the entire agreement must be viewed as a whole in construing the intent of the parties, and that all provisions should, if possible, be so interpreted as to harmonize with each other. 12 Am. Jur., Contracts, p. 772, sec. 241. The portion of the preamble hereinbefore quoted states very clearly that both parties to the postnuptial agreement mutually agreed that, in case the wife survived and so long as she remained Greiling's widow, she was to have "a home and a net income of one hundred ten ($110) dollars a month." Not only do the words "improvements and repairs" appear after the semicolon following the word *"demise"* but so do also "taxes and water assessments, fire and other insurance premiums." Therefore, under the minority's interpretation the widow would be obligated not only to pay the improvements and repairs of the homestead, but also the taxes and insurance premiums. We of the majority think that, construed as a whole and giving due weight to the preamble, it was the intention of the parties that the widow was to have the use of the home and $110 per month, and that all improvements, repairs, taxes, and insurance premiums on the homestead, as well as on the rental property, were to be deducted from gross rentals in computing the net income of $110 per month the widow was to receive.

It is also a well-accepted rule of construction that, if there is any ambiguity in a contract, the practical interpretation of the parties is to be given great weight. *Crolius v. Lorge* (1927), 192 Wis. 130, 136, 212 N. W. 253; *Standard Sewing Equip. Corp. v. Motor Specialty* (1953), 263 Wis. 467, 472, 57 N. W. (2d) 706, and 12 Am. Jur., Contracts, p. 787, sec. 249. Because the gross rentals collected by the widow were $110 per month, which was also to be her net income from rentals, the trustee during the entire administration of the trust had paid all of the real-estate taxes against all of the

properties including the homestead, and had also paid all the insurance premiums, and from time to time had paid for repairs to the homestead as well as the other properties. These disbursements were itemized in the reports of the trustee which had been filed over a ten-year period prior to the hearing of the widow's petition for reimbursement, and the trial court had approved such accounts, none of the residuary legatees having raised any objection thereto. After the death of the testator and the entering of the final decree, the trustee and the residuary legatees represented the interest of the testator under the postnuptial agreement. Thus we have a practical interpretation by the parties for ten years that the real-estate taxes, repairs, and insurance premiums on the homestead were payable out of the trust in the event the gross rental income was insufficient to pay the same and leave the widow a net income of $110 per month.

The dissenting opinion questions that the rule of practical construction by the parties is applicable here because Greiling, one of the parties, is dead, and it is, therefore, suggested that the practical interpretation by his trustee and children could not be based on his intent. However, it is common knowledge among lawyers engaged in probate practice that a testator, who names an individual as executor or trustee in his will, who is not a member of the family (as was the case here), almost invariably discusses the subject of the proposed administration of his estate with such named executor and trustee. In this case, because the will refers to the antenuptial and postnuptial agreements, testator in all likelihood discussed these with the trustee also. In the instant case there is no reason to believe that the trustee and testator's children were not fully informed as to testator's intent as to his interpretation of the terms of the antenuptial and postnuptial agreements and of the will. We, therefore, are of the opinion that the practical interpretation by all interested parties over

a ten-year period is not to be brushed aside as of no consequence.

While construction of the postnuptial agreement involves interpretation of a contract, not a will, there is respectable authority for courts giving consideration to practical construction of wills long acquiesced in by interested parties. *Estate of Kelly* (1929), 177 Minn. 311, 225 N. W. 156, 67 A. L. R. 1268; Anno. 67 A. L. R. 1272, entitled "Practical construction placed on wills by parties interested;" and 57 Am. Jur., Wills, p. 725, sec. 1131.

While technically the postnuptial agreement provided for the widow paying taxes, improvements, repairs, and insurance premiums and securing reimbursement from the trustee in the event her net income from rentals fell below $110 per month, the practical way of handling the matter so long as gross rental income remains $110 a month is for the trustee to pay such items directly rather than forcing the widow to pay them and then secure reimbursement from the trustee. The trial court expressed some doubt as to the power of the court to permit the trustee to continue to make such payments directly. We are of the opinion that the trial court has ample power to permit the trustee to continue such practice and that the same does not contravene the intention of the parties to the postnuptial agreement.

*By the Court.*—Order reversed and cause remanded with directions to enter an order granting the prayer of the widow's petition for reimbursement.

BROWN, J. (*dissenting*). The rights of the appellant and the powers and duties of the respondent trustee depend upon a construction of the final judgment. That judgment incorporated the terms of the will by reference and that, in turn, by reference incorporated the terms of an antenuptial agreement as affected by a postnuptial modification. This sounds complicated but actually it is as though the final judgment

had repeated the words of the postnuptial agreement. Such words, pertinent to this controversy, are:

". . . that she shall be permitted to occupy rent-free his homestead premises, with furnishings and equipment, or either of his other houses or duplexes, and also any summer home which he may own at the time of his demise; that she is to supervise and rent out to best advantage the remaining real estate, and collect the rents, issues, and profits thereof, make necessary or desirable improvements and repairs, pay taxes and water assessments, and fire and other insurance premiums, and each month apply the excess on account of her allowance, and whenever such net rentals shall be less than one hundred ten ($110) dollars a month, the executor and/or trustee of his estate upon demand shall pay to her the deficiency, so that her net income shall at all times be one hundred ten ($110) dollars a month—. . ."

The provisions dealing with real estate are in two parts. The first concerns the residence of the widow. She has that, rent-free. The second part concerns the rental property, which is all the other real estate left by the deceased. The widow is to rent it to the best advantage, keep it improved and in repair, pay taxes, assessments, and insurance premiums and each month keep the *net rentals* for herself. If such net rentals fall short of $110 per month the trustee is to make up the difference. The net return of a thing is the return which remains after charges attributable to that thing have been met. I can find no justification in the final judgment, or in the documents incorporated in it, for charging against gross rentals, to ascertain net rentals, money laid out on nonrental property.

We may presume that it was Mr. Greiling's intent to make adequate provision for his widow. He set up a plan which he supposed would suffice, using plain words and well-understood terms. The plan may have failed, but if it did its inadequacy does not warrant a court in substituting another one, inconsistent with the words Mr. Greiling used, and jus-

tify the substitution because it carries out the predominant intent of liberal provision for the widow. We may not disregard the testator's chosen means in order to accomplish his probable ends.

" '. . . courts do not sit to write wills, but to construe them, . . .'

". . . The writing itself occasions no uncertainty, and therefore the wisdom or lack of wisdom in the method used by the testatrix in devising the property does not open the door for questions of construction. No ambiguity exists, and the will must stand as drawn." *Will of Suhling* (1951), 258 Wis. 215, 219, 220, 45 N. W. (2d) 608.

In my opinion the trial court correctly treated these expenditures as matters to be handled by the widow out of her allowance and not properly to be added to her allowance by the trustee.

I wish to note a particular protest against the method used by the court to discover the testator's intent, namely, the test of practical construction. I agree wholeheartedly that, if there is ambiguity in a contract, the practical interpretation of the parties to it is to be given great weight. But the widow here is not claiming under a contract. She is claiming under a will; otherwise this controversy would not be in county court at all. Therefore we are concerned with the testator's expressed intent, carried over into the final judgment. The language to be construed is that originated or adopted by the testator. Third parties, such as executors or trustees, did not choose the language in the first place and are not responsible for it, and to assert that *their* conduct indicates how the dead man meant *his* words to be understood seems to me to be logically unsound and without legal sanction.

I am authorized to say that Mr. Justice BROADFOOT and Mr. Justice GEHL join in this dissent.