GOLDMANN TRUST, by Trustee, Appellant, v. GOLDMANN and others, Respondents.

*November 24, 1964—January 5, 1965.*

144

For the appellant there was a brief by *Joseph J. Shutkin, Edward D. Schneiderman,* and *Charles D. Ashley,* all of Milwaukee, and oral argument by *Mr. Shutkin.*

For the respondents there was a brief by *Foley, Sammond & Lardner,* attorneys, and *Marvin E. Klitsner* and *James F. Janz* of counsel, all of Milwaukee, and oral argument by *Mr. Klitsner.*

WILKIE, J. The only issue involved on this appeal is whether the disagreement concerning termination of employment of a permanent employee is a question or dispute between the parties which is subject to arbitration under paragraph 15 of the partnership agreement.

Appellant contends that since withholding written consent to a permanent employee's discharge is an absolute right or privilege of each party, there is no dispute calling for arbitration. Respondents on the other hand urge that once

mutual written consent cannot be obtained, a dispute arises that is subject to the arbitration procedure contained in the agreement. In essence respondents contend that every disagreement arising out of any phase of the operation of the business constitutes a dispute which at the request of either is to be arbitrated; appellant, on the other hand, maintains that this is one of the few specific decisions that requires written mutual consent of both parties and that, in such a situation, there is no machinery for resolving a disagreement where either party refuses to give that consent.

The entire controversy presents a question of law involving the proper construction of the very comprehensive and carefully drafted partnership agreement.

A mere disagreement in interpreting the partnership agreement itself is not tantamount to saying that an arbitrable dispute is present. A controversy must arise over matters within the scope of the arbitration clause, or no reason exists for arbitration.[1] In ascertaining whether or not a dispute exists, the agreement must be considered as a whole and all parts harmonized as far as possible.[2] Effort must be made to carry out the intent of the parties.[3]

The general mandate of the agreement under paragraph 8 states that the partnership "shall be mutually controlled . . . and all matters involving action of any kind, or inaction of any kind, and all policies or decisions of the firm shall be decided only by mutual consent in fact of the parties hereto or their . . . designated representatives, . . ." The very same paragraph provides that this mutual consent must be in writing as to several designated areas of action or inaction. Thus, the agreement provides: "Neither party hereto, nor their designated representatives, shall have power or

[1] *Quast v. Guetzkow* (1916), 164 Wis. 197, 159 N. W. 810.
[2] *Will of Greiling* (1953), 264 Wis. 146, 59 N. W. (2d) 241; *Kuenzi v. Radloff* (1948), 253 Wis. 575, 34 N. W. (2d) 798.
[3] *Estate of Schmitz* (1962), 17 Wis. (2d) 412, 117 N. W. (2d) 249.

authority to bind the firm in any contract, lease, insurance policy, promissory note, or to incur any expense, or hire or fire permanent employees, or those under contract under valid agreement for a definite period, without mutual consent in fact in writing . . . ."

Paragraph 5 requires written consent of the other partner before any advance is made by a partner to the partnership and before any interest is paid thereon; paragraph 9 requires written consent on every purchase order. Paragraph 20 requires mutual written consent in seven other specific areas of decision and, as pertinent here, repeats the requirement of paragraph 8 that neither partner shall dismiss a permanent employee without the written consent of the other.

In construing this partnership agreement it must be assumed that these requirements of mutual written consent for the firing of a permanent employee were inserted for a purpose.[4] A construction of the agreement which gives reasonable meaning to all provisions is preferable to one which leaves part of the language useless or inexplicable or creates surplusage.[5]

If every dispute concerning any partnership matter is already subject to arbitration, there would have been no reason for including the written-consent language. That the partners actually intended that certain types of decisions could be made only by written mutual consent, while anticipating arbitration where there was disagreement about other decisions affecting the partnership business, gives effect to both the mutual written-consent and arbitration provisions of the contract. In addition to intending that cer-

---

[4] *Kuranda v. O'Connor* (1964), 23 Wis. (2d) 51, 126 N. W. (2d) 568; *Tollefson v. Green Bay Packers* (1950), 256 Wis. 318, 41 N. W. (2d) 201.

[5] *Worth v. Kelley Co.* (1964), 22 Wis. (2d) 318, 126 N. W. (2d) 75; *Nelson v. Boos* (1959), 7 Wis. (2d) 393, 96 N. W. (2d) 813; *Lauterbach v. Brown* (1959), 7 Wis. (2d) 240, 96 N. W. (2d) 605.

tain decisions could only be made by the mutual written consent of the partners, the only other reason for the written-consent provision would be to assure that a permanent record is kept of important decisions. This would be unnecessary inasmuch as paragraph 8 already requires that the "decisions mutually arrived at . . . by the partners . . . shall be written in the form of minutes. . . ."

Another important rule employed in construing agreements is that where there is an apparent conflict between a general and a specific provision, the latter controls.[6] Specifically requiring written mutual consent in the matters of hiring and firing permanent employees when such situations would seemingly be adequately covered by an all-inclusive mutual-consent provision (not in writing) evinces an intent to deal with these matters differently. This is especially true where identical requirements are inserted in two different spots in the agreement. The particular provisions insisting upon written mutual consent should control over the general requirement of mutual consent.

Although paragraph 15 commences with sweeping language calling for arbitration of "all disputes and questions whatsoever," several particular situations follow before the scope again broadens to include "any other matter in any way relating to . . . the rights, duties and liabilities of any person hereunder, . . ." The elaboration of specifics tends to dilute the effect of the all-encompassing language. Had the partners intended to arbitrate every conceivable dispute, the sweeping language would have been sufficient. Particularizing casts doubt as to what situations are to be covered. It is significant that although some instances are specially singled out to be arbitrated, no specific reference

---

[6] *Thomsen-Abbott Construction Co. v. Wausau* (1960), 9 Wis. (2d) 225, 100 N. W. (2d) 921; *Johnson v. Green Bay Packers* (1956), 272 Wis. 149, 74 N. W. (2d) 784; *Milwaukee County v. H. Neidner & Co.* (1936), 220 Wis. 185, 263 N. W. 468, 265 N. W. 226, 266 N. W. 238.

is made to the hiring or firing of permanent employees as is done in paragraphs 8 and 20. This could reasonably be construed to mean that hirings and firings are not be to arbitrated. The trial court relied on the "rights . . . of any person hereunder" language in finding that there was an arbitrable dispute. A close examination of the partnership agreement discloses, however, that allusions to parties or persons were made only in reference to the partners and not in connection with others. Thus this language does not dictate, as the trial court felt, that the rights of a nonpartner-permanent employee be submitted to arbitration.

Paragraph 10 defines what is meant by a family member and further provides:

". . . in event the compensation from the firm for family employees cannot be agreed upon it shall be determined by arbitration as hereinafter provided for in reference to any disputes and differences arising in the conduct of the business of the firm."

This language, limiting the arbitration provision solely to the issue of compensation, implies that arbitration is not available in other employment situations. At least the language demonstrates that the drafters of the partnership agreement did not consider the general arbitration provision (paragraph 15) as all-inclusive as the respondents maintain.

Paragraphs 8 and 20 clearly call for written consent in order to discharge a permanent employee. Assuming that the present disagreement over Werthan Weil's continued employment is subject to arbitration and, further, that respondents prevail, the agreement still lacks any provision which forces the unsuccessful party to acquiesce in writing. Paragraph 15 merely declares that the arbitrators' decision is final and conclusive, but contains no command to the unsuccessful partner. Not only does the absence of a provision to this effect in the otherwise extremely detailed and meticulously drawn agreement indicate that there was to be no

arbitration where written consent was required, but it makes any arbitration futile since there is no way of enforcing the decision. Further action would be necessary to compel the recalcitrant partner to give his written consent. An arbitration award must be final and must not "naturally lead to and stimulate new controversies and litigation, instead of securing the object sought to be attained by the arbitration of finally and definitely settling the old controversy." [7]

Our analysis of the agreement as a whole leads to the conclusion that the question of a permanent employee's continued employment is not an arbitrable dispute. In reaching such a determination we have given proper consideration to the general rule that arbitration should be encouraged.[8] But parties may properly contract that certain matters that deteriorate into disputes shall be arbitrated while other matters must be left for decision in another way or remain unresolved. Under a fair and complete consideration of their agreement this is precisely what the parties intended to do here.

It might be contended that the very subject of the proper construction of the agreement, considering the opposing contentions of appellant and respondents, is itself the proper subject of arbitration, particularly in view of the language of paragraph 15, which provides for arbitration of "the construction or application" of the agreement. However, neither party raised this point either at the time of the demand for arbitration on June 15, 1964, or in the proceedings in the

---

[7] *Frankfurth v. Steinmeyer* (1902), 113 Wis. 195, 204, 89 N. W. 148; *Slocum v. Damon* (1845), 1 Pin. (Wis.) 520; see also sec. 298.10 (1), Stats. "In either of the following cases the court . . . must make an order vacating the award upon the application of any party to the arbitration: . . . (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[8] *In re Lower Baraboo River Drainage Dist.* (1929), 199 Wis. 230, 240, 225 N. W. 331.

lower court or here. Thus, the parties chose to battle out this construction question in the courts and have sought an adjudication as a matter of law on the meaning of their agreement.

Then, too, to regard this argument about the construction of the agreement as raising a dispute which is arbitrable as a preliminary question would unduly prolong the resolution of the dispute since even after a particular construction resulted from arbitration, the controversy might well continue through a court review of such decision or in any event through the subsequent arbitration of the very subject still left undecided. In the end, any construction which would support respondents' position would, as we view it, nullify the specific provisions of paragraphs 8 and 10, calling for written consent of both parties before a permanent employee may be discharged.

The construction of the agreement as decided here could cause a temporary impasse in partnership affairs, but a contrary result would wreak havoc with the specific terms of this elaborately drawn agreement. Any stalemate occasioned would not be hopeless, however. The partnership ran for an initial term of ten years with a provision for renewal for two additional five-year periods unless either partner or his designated representative should give proper notice to the contrary. When the original partnership terminated in 1961 the term was extended until the end of 1966, and such extension modified the original agreement as to several matters. There is no reason why the problem of Werthan Weil's discharge cannot be resolved and the agreement modified to clarify the employment provisions if mutually so desired when the present term expires on December 31, 1966. At any rate, it is doubtful that the retention of this particular ready-to-wear buyer for two more years will completely deadlock the partnership.

*By the Court.*—Order reversed, and cause remanded for further proceedings not inconsistent with this opinion.

GORDON, J. (*dissenting*). In my opinion, this comprehensive partnership agreement was designed to provide for the resolution of *all* business decisions rather than to permit an impasse as to certain disputes. The language of the arbitration clause is suffficiently broad to warrant this interpretation; paragraph 15 says that "all disputes and questions whatsoever" shall be determined by arbitration.

It is difficult to believe that the parties intended to withhold certain areas of potential disagreement from the arbitration system since the agreement was executed in order to insure continuity of the business. If a given issue, such as the discharge of a permanent employee, were unresolved, it could jeopardize the business and cause a dissolution of the partnership; this would be contrary to the parties' express declaration that they "are desirous of continuing said partnership."

The terms of paragraph 15 are very broad; it is admittedly arguable that the specific provisions in paragraphs 8, 9, and 20 tend to dilute the general provisions of paragraph 15. For the sake of argument, it may be assumed that the majority is correct in its interpretation that the elaboration of specifics supersedes the requirement for arbitration of "all disputes and questions whatsoever;" nevertheless, the mere existence of a dispute as to interpretation of the contract is *itself* subject to arbitration. This stems from the express terms of paragraph 15 which make arbitrable all questions "touching these presents, or the construction or application thereof."

In other words, regardless which side is actually correct about the right to arbitrate the effort to discharge a permanent employee, the existence of an issue as to the proper interpretation of the contract must, by its own terms, be submitted to arbitration.

As I read this agreement, the parties committed themselves to use arbitration as a comprehensive technique for

preserving the operation of the business in spite of divided ownership.

Arbitration is by no means a new device; in 320 B. C., Aristotle said, "The arbitrator looks to what is equitable, the judge to what is law; and it was for this purpose that arbitration was introduced, namely, that equity might prevail." Rhetoric, bk. 1, ch. 13. An agreement to arbitrate as a method of avoiding litigation is consonant with the legislative policy as expressed in ch. 298, Stats.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice BEILFUSS join in this dissent.