FRANKFURTH and another, Appellants, vs. STEINMEYER and
another, Respondents.

*January 7—February 18, 1902.*

*Arbitration and award: Waiver: Tenants in common: Partition:
Powers of arbitrators: Imperfect award.*

1. Where each of the parties to an arbitration selects his attorney
   as one of the three arbitrators, and, with full knowledge of the
   other party, and without objection, consults with such attorney
   in relation to the matters during the pendency of the proceed-
   ings, any objection to the award on that ground is waived.
2. A controversy between tenants in common respecting the parti-
   tion of real estate may be submitted to arbitrators.
3. Under subd. 4, sec. 3552, Stats. 1898, providing that either party
   to an arbitration may move to vacate the award on the ground
   that the arbitrators exceeded the powers conferred upon them
   by the articles of submission, an award partitioning real estate
   will be set aside when it appears that arbitrators, appointed to
   partition certain designated real estate, also determine in
   their award the rights of the parties in property not included
   in the articles of submission.
4. By the articles submitting the partition of land to arbitrators it
   was agreed that there should be an absolute division of the real
   estate and of all rights, privileges, interests and easements
   therein; that each party was to have an independent roadway,
   and, if it could possibly be done, that neither party was to have
   any way, easement, burden, or charge of any kind and nature
   upon or across the portion allotted to the other. It did not
   appear in the award of the arbitrators that it was impossible
   to make such a partition. *Held*, that under subd. 4, sec. 3552,
   Stats. 1898 (providing that an award may be set aside where
   the arbitrators have exceeded their powers, and have so im-
   perfectly executed their powers that a mutual, final, and definite
   award on the subject matter submitted was not made), an
   award which unnecessarily gave to one party a restricted and
   defeasible right of way across the land of the other should be
   set aside.

APPEAL from a judgment of the circuit court for Wauke-
sha county: JAMES J. DICK, Circuit Judge. *Reversed.*

This is an appeal from a judgment confirming an award

of arbitrators partitioning and dividing the real estate and property described between the parties as tenants in common; that is to say, so that *Steinmeyer* and *Ott* have one half thereof, having due regard to the relative size and value of the same, and to *Frankfurth* and *Maschauer* the other half thereof, having due regard to the size and value of the same. The land appears to be situated on the southerly end and westerly side of Lake Garvin, and from the southerly end of the lake a low piece of ground, called a "mudhole," extended southerly a distance of perhaps 200 feet, and about 100 feet east of the southerly end of the mudhole is a highway. Some 200 or 300 feet northerly from the south end of the lake is a canal running from Lake Garvin west to Okauchee Lake, a distance of about fifty feet, and a strip of land of that width, belonging to the parties in common, extended north of the canal for about 112 feet. The land so held in common is known as the property of the Garvin Lake Club, and extends to both of the lakes named, and southerly from the south end of the mudhole some fifty or 100 feet. The land slopes quite rapidly down to the mudhole on both sides and at the southerly end, and the shores of the club property bordering on the respective lakes for a distance of fifty or 100 feet appear to slope rapidly down to the water, leaving a plateau between of about 300 feet in length and from fifty to 150 feet wide, and from thence north to the canal there is a roadway about eight feet wide on the top of the ridge. The submission was executed May 23, 1900, and after providing for the submission, and covenanting and agreeing to abide by the award to be made by the arbitrators, or any two of them, the submission contained the following provisions:

"It is further understood and agreed that said arbitrators shall make an absolute division of said real estate and all rights, privileges, interests, and easements therein and improvements thereon, so that when said division is completed,

the parties of the first part and the parties of the second part shall each have an independent roadway leading from the right of way lying on the east line of said club property to the portion allotted to said parties, respectively, if, in the judgment of the arbitrators, it can possibly be done, and that neither party shall have any right of way, easement, burden, or charge of any kind or nature upon or across the portion allotted to the other; that the houses now occupied by the respective parties shall be allotted to them respectively; and such other real estate and improvements as cannot be specifically divided between said parties on account of location or otherwise, and must therefore be allotted to one or the other, shall have a cash value placed thereon by said arbitrators, and the differences of said cash values so ascertained paid by one party to the other as the balance thereof shall appear.

"It is understood and agreed that the said parties of the second part shall have the use of the barn now located on the club property for thirty days after the making of the award herein.

"It is further understood and agreed that the ice house now on the club property shall remain intact during the season of 1900; that both of said parties shall have the right to use the ice therein as heretofore."

It was therein further provided that the expenses of arbitration should be borne equally by the parties, and a covenant and agreement that judgment should be entered upon the written award to be made and signed by at least two of the arbitrators.

The award was signed by two of the three arbitrators June 30, 1900, and after recitals of such common ownership, and the submission to the three arbitrators named, and the fact that the arbitrators were first duly sworn, it was to the effect:

"(1) That we award to *Steinmeyer* and *Ott* all of the real estate, with the improvements thereon, lying west and south of a line running from a point on the easterly side of Okauchee Lake, and some 200 feet northerly from the southwest corner of the club property, in a southeasterly direction to the easterly side of the club property at a point about 100

feet from the southeast corner thereof. (2) That we award to *Frankfurth* and *Maschauer* all the real estate, with the improvements thereon, lying to the north and east of that line. (3) That we award to *Steinmeyer* and *Ott* the northeasterly portion of the club property, known as the 'ridge,' lying northeast of the canal between Lakes Okauchee and Garvin, the canal itself, the bath house on the canal, and a piece of the ridge extending seventy-five feet southeast of the south line of the boat house over the canal,—being land 'I' to 'J' on the map. (4) That, *Frankfurth* and *Maschauer* objecting to building a bridge over the mudhole because of expense and inconvenience, and *Steinmeyer* and *Ott* being satisfied therewith, and to give up to them the present entrance driveway as a private driveway, and to build one of their own south of the present one: Therefore we award to *Frankfurth* and *Maschauer* a strip of land twelve feet in width extending from the present entrance gate, marked 'F,' at the east line of the club property, on and along the present roadway, and the continuation thereof, as marked on the annexed map, to the intersection of the division line hereinbefore described, at a point in the vicinity of the green stake; to be used by them as a right of way or driveway only. Said piece is designated on the map as 'F,' 'K,' and 'G,' and is to include sufficient land to make a proper approach to the piece of land to be deeded to *Frankfurth* and *Maschauer* for barn purposes, and designated on the map as 'H.'—Said *Frankfurth* and *Maschauer* to pay to *Steinmeyer* and *Ott* $25 for the piece of land deeded to them for barn purposes. (5) That we award to *Steinmeyer* and *Ott* the following improvements located on the real estate hereinbefore awarded to them: The barn, valued at $561.40; the ice house, valued at $96.10; the boat house, valued at $275.54; the canal, valued at $200; the flagstaff, valued at $15; and the scow, valued at $10,—so that *Steinmeyer* and *Ott* are required to pay to *Frankfurth* and *Maschauer* one half thereof, to wit, $579.02. (6) That we award to *Frankfurth* and *Maschauer* the following improvements on the real estate hereinbefore awarded to them: The summer house, valued at $30; so that *Frankfurth* and *Maschauer* pay to *Steinmeyer* and *Ott* one half thereof, to wit, $15. (7) The deed of the roadway, mentioned in No. 4, awarded to *Frankfurth* and *Maschauer*, is to contain a provision that no building or ob-

structions of any kind are to be erected thereon; and that *Steinmeyer* and *Ott* are to have the perpetual right to cross said real estate at any time and at any point thereon for all reasonable purposes, but not to use the same for a driveway; that the deed to *Steinmeyer* and *Ott* is to contain a provision that there shall be erected on the real estate lying between D, F, K, and H on the map no buildings of any kind except an ice house, and that said property be kept in a clean and respectable condition,. and the mudhole thereon is not to be used for the deposit of refuse. (8) That *Steinmeyer* and *Ott* are to waive in writing all and every right of way which they might otherwise be entitled to across the real estate of *Frankfurth* and *Maschauer* to reach their property adjacent to the canal and bath house except the right to travel to and from said piece by boat. (9) That the present windmill is to be torn down, and that *Steinmeyer* and *Ott* are to have the iron standing-pump and well and *Frankfurth* and *Maschauer* the hot-air pump and connections. (10) That *Frankfurth* and *Maschauer* shall pay one half of the actual cost of building a road south of the present roadway to be used by *Steinmeyer* and *Ott* as an entrance from the east line of the club property to the piece hereby awarded to them. (11) That the land at the northeast extremity of the club property, being the part 'I' to 'J,' hereinbefore awarded to *Steinmeyer* and *Ott*, conveys to them the same to the low-water mark only, and that, in case the dam should at any time in the future be removed, and the lake lowered to its original level, then the title of said piece of land shall revert to *Frankfurth* and *Maschauer*. (12) That in case the roadway, F, K, and G, and barn site, H, hereinbefore awarded to *Frankfurth* and *Maschauer*, be by them abandoned as a roadway, or be by them used for any other purpose than a roadway and a barn site, then the title to said roadway and also to said barn site shall revert to *Steinmeyer* and *Ott*; that the deeds conveying said pieces of property, respectively, contain provisions in compliance with the awards last above mentioned. (13) That the barn and ice house and present driveway may be used by all said parties jointly as heretofore until October 1, 1900. (14) The exclusive use of the present wooden windmill is hereby awarded to *Steinmeyer* and *Ott* until October 1, 1900, when the same is to be removed. Right is

given to *Steinmeyer* and *Ott* to remove the trees on the proposed driveway on the plateau from point K to G. *Steinmeyer* and *Ott* may cut ice on Garvin Lake, and haul the same from Lake Garvin to the mudhole south of the same to their ice house on their premises during the winter months. That $800, being the expenses and charges incident to the arbitration, shall be paid as follows: *Frankfurth* and *Maschauer* $400 thereof, and *Steinmeyer* and *Ott* $400 thereof."

The motion to vacate and set aside the award or modify the same was denied by the circuit court, and thereupon an order was entered in that court confirming the award so made in all things, and judgment was thereupon entered in the circuit court in strict accordance with the award. From that judgment, *Frankfurth* and *Maschauer* bring this appeal.

*M. C. Krause,* for the appellants.

For the respondents there was a brief by *Austin, Fehr & Gehrz,* and oral argument by *W. H. Austin.*

Cassoday, C. J. It is admitted that one of the arbitrators was at the time of his appointment an attorney for *Frankfurth* and *Maschauer,* and another was attorney for *Steinmeyer* and *Ott.* There is evidence tending to prove that during the pendency of the matter before the arbitrators each of the arbitrators mentioned consulted with the clients who so appointed him in relation to some of the matters so to be determined by the arbitrators. The general rule undoubtedly is "that whomsoever the parties see fit to select . . . may be chosen as arbitrators." 2 Am. & Eng. Ency. of Law (2d ed.), 633–637. But, "if an arbitrator has any personal interest in the subject-matter of the dispute, which is unknown to the parties, he is incompetent to act, and his award will be void. But if such interest is known to them, and they do not object, his award will be binding." Id. So, if it appears that an arbitrator exhibited bias—strong prejudice or hostile feeling—toward either party, the award

will be set aside, even if "another arbitrator, who has joined in the award, has acted impartially." Id. The intention of arbitrators may be "perfectly honest, yet, if their acts are plainly partial, an award will be set aside." Id. So it has been held in Illinois that:

"What will be misconduct on the part of a juror, will, as a general rule, be such on the part of an arbitrator. Neither has a right to learn facts, except as brought to his attention on the trial. It is gross misconduct for either to seek evidence or the opinions of others in regard to the case, or anything material to its decision, in another mode. If a party, his agent or attorney, converses with an arbitrator, after his selection, about the facts or merits of the case, an award in such party's favor should be set aside on the presumption it was obtained by improper influence." *Moshier v. Shear,* 102 Ill. 169.

So it is said by Mr. Morse that arbitrators are the "agents of both parties alike, and not of one party only. . . . Under no circumstances can an arbitrator become an advocate. He is always bound to exercise the highest degree of judicial impartiality, without the slightest regard to the manner in which the charge has been placed upon him." Morse, Arbitrators, 106.

"If the parties to an arbitration," however, "know of any circumstance disqualifying the arbitrator, but yet go on with the hearing, they thereby waive such objections as may exist to his appointment. In order to make an objection to an arbitrator effective, it must be made as soon as the fact of his incompetency became known to the party objecting." 2 Am. & Eng. Ency. of Law (2nd ed.), 637.

In the case at bar the respective parties appear to have acted with full knowledge of the circumstances tending to disqualify one or more of the arbitrators, and hence have waived any objection to the award on that ground.

2. It is conceded that the controversies of the parties respecting the partition of the Garvin Lake Club property between them as tenants in common was rightfully submitted

to arbitrators, as authorized by statute.     Sec. 3545, Stats.
1898; *McCord v. Flynn,* 111 Wis. 78.

Counsel for the appellants contend that the award should
have been set aside upon two grounds.     One is that the ar-
bitrators exceeded the powers conferred upon them by the
articles of submission; and the other is that it appears upon
the face of the award that the arbitrators so imperfectly exe-
cuted their powers that a mutual, final, and definite award
on the subject matter submitted was not made.     If either of
the grounds so stated is well founded, then the award must
be set aside, since it is expressly so prescribed by statute.
Subd. 4, sec. 3552, Stats. 1898; *McCord v. Flynn, supra.*

After careful consideration we are forced to the conclusion
that such objections to the award are both well taken.     In the
fourth subdivision of the award it is, in effect, prescribed that
*Steinmeyer* and *Ott* were to deed to *Frankfurth* and *Masch-*
*auer* a piece of land, designated on the map mentioned as
"H," for barn purposes, with land sufficient to make a proper
approach to the same, and for which *Frankfurth* and *Masch-*
*auer* were to pay *Steinmeyer* and *Ott* $25 ; and by the twelfth
subdivision it is provided that, if *Frankfurth* and *Maschauer*
abandon such barn site, or use the same for any other pur-
pose, then the title to the same was to revert to *Steinmeyer*
and *Ott,* and the deed of conveyance was to contain such a
provision.     The roadway awarded was to include such ap-
proach to the barn site.     It is enough to say that the piece of
land so designated as "H" is situated entirely outside of the
club property.     The arbitrators had no more authority to
make such award in respect to that piece of land than they
had in respect to any other piece of land owned by *Steinmeyer*
and *Ott* entirely outside of their jurisdiction.     The only
answer suggested by counsel is that *Frankfurth* and *Masch-*
*auer* were not obliged to accept a deed of the barn site, H, with
such approach, nor to pay the $25 ; and that the barn site did
not enter into the consideration of the arbitrators in making

the division of the club property. This is a frank confession of the want of power in the arbitrators to make such award. And yet the location of the roadway may have been very objectionable to *Frankfurth* and *Maschauer,* because not connected with a barn site and approaches to which they should have had the absolute title. Certainly, the arbitrators had no power to force *Frankfurth* and *Maschauer* into such a position merely because they might, if they saw fit, refuse to accept a deed of the barn site, H, and its approach. Besides, the dimensions of such approach were left indefinite and uncertain.

3. The character and situation of the property was peculiar. The parties had "been unable to agree upon a division between" themselves. The propriety of an arbitration was manifest. By the articles of submission it was expressly agreed that there should be "an absolute division" of the "real estate and all rights, privileges, interests, and easements therein and improvements thereon, so that when" such division should be "completed" each party would "have an independent roadway from the right of way, lying on the east line of the said club property, to the portion allotted to" them, "respectively, if in the judgment of the arbitrators" it could "possibly be done; and that neither party" should "have any right of way, easement, burden, or charge of any kind or nature upon or across the portion allotted to the other." It does not appear that in the judgment of the arbitrators it was impossible to make a division which would have given to each party such "independent roadway." Instead of awarding to *Frankfurth* and *Maschauer* such independent roadway, the strip of land so awarded to them by the fourth subdivision was "to be used by them as a right of way or driveway *only*"; and by the seventh subdivision the deed to the same was to "contain a provision that no building or obstruction of any kind" was "to be erected thereon," and *Steinmeyer* and *Ott* were "to have the perpetual right to cross"

the same "at any time and at any point thereon for all reasonable purposes, but not to use the same for a driveway"; and by the twelfth subdivision it is provided that the conveyance of such real estate should contain a provision that, if the roadway and barn site, H, should be abandoned by *Frankfurth* and *Maschauer,* or be used by them for any "other purpose than a roadway or a barn site," then the title to the same should "revert to *Steinmeyer* and *Ott.*" Moreover, it is provided by the fourth and tenth subdivisions of the award that *Steinmeyer* and *Ott* were to build a driveway of their own on the land awarded to them south of the one then existing, and that *Frankfurth* and *Maschauer* should "pay one half of the actual cost of building" the same. Such provisions of the award, and other which might be mentioned, if not in excess of the powers conferred upon the arbitrators, were certainly in conflict with the letter and spirit of the articles of submission, wherein it was sought to secure an "absolute division," an "independent roadway," so "that neither party" should "have any right of way, easement, burden, or charge of any kind or nature upon or across the portion allotted to the other." In the language of the statute, we must hold that the "arbitrators exceeded their powers," and "so imperfectly executed them that a mutual, final, and definite award on the subject-matter submitted" to them "was not made." Subd. 4, sec. 3552, Stats. 1898. Such an award, if sought to be executed, would naturally lead to and stimulate new controversies and litigation, instead of securing the object sought to be attained by the arbitration of finally and definitely settling the old controversy.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded, with direction to grant the motion to vacate and set aside the award, and for further proceedings according to law.