RICHCO STRUCTURES, Respondent, v. PARKSIDE VILLAGE, INC., and others, Appellants: KENOSHA SAVINGS & LOAN ASSOCIATION, and others, Defendants.

*No. 75-798. Submitted on briefs January 5, 1978.—*
*Decided March 7, 1978.*
(Also reported in 263 N.W.2d 204.)

548

For appellants the cause was submitted on the brief of *James P. O'Neill, Douglas J. Carroll* and *Arnold, Murray & O'Neill* of Milwaukee.

For respondent the cause was submitted on the brief of *William R. Steinmetz* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S. C.* of Milwaukee.

ABRAHAMSON, J.  At issue is whether the failure of one named as a neutral arbitrator to make full disclosure

regarding his relationship with the parties or with a representative of the parties to an arbitration proceeding requires vacating the arbitration award. The trial court vacated the award, and we affirm.

## I.

In April of 1971, Richco Structures (hereinafter Richco) contracted with Parkside Village, Inc. to fabricate and erect the exteriors and certain parts of the interiors of three buildings. Abendroth and Associates, Inc. (hereinafter Associates) was the architect; Emil Abendroth was president of both Parkside Village, Inc. and Associates. Emil Abendroth, Associates and Parkside Village, Inc. will collectively be referred to as "Parkside."

During the construction process, Parkside complained about the quality of Richco's work. Parkside ultimately refused to pay the full contract price, and Richco commenced suit seeking $106,003 on the contract. Parkside counterclaimed asserting damages of $590,000 resulting from breaches of contract by Richco.

Richco and Parkside agreed to submit the controversy to arbitration and stipulated to the terms of arbitration. Each was to appoint an arbitrator and the two appointed arbitrators would choose, as the stipulation phrased it, "a third, independent arbitrator." If agreement among the three arbitrators proved impossible, the findings and award of the independent arbitrator were to be accepted as final and binding. The arbitrators' report was to be entered by the trial court as a final judgment from which both parties expressly waived right to appeal. The trial court stayed proceedings pending the report of the arbitrators.

Wallace Syring, a Milwaukee contractor, was appointed as the third, independent arbitrator. Since unanimity proved to be impossible, the final report was signed by

Syring alone. His award was in favor of Parkside. Parkside then moved the court to confirm Syring's report and enter judgment upon it, pursuant to sec. 298.09, Stats.[1] Richco moved the court to vacate the award, alleging, *inter alia,* that the award had been procured by corruption and undue means and that there was evident partiality on the part of the arbitrators.

The court filed a written decision ruling on various aspects of the motions and stating that, upon Syring's submission of an amended report, the court would confirm the award. The amended report was requested not for the purpose of modifying the award made by Syring, but in order to make Syring's report conform to the stipulated terms of the arbitration by stating whether either of the other arbitrators had concurred in any portion of the report and award.

After the amended report had been submitted, Richco made a motion that the trial court review its previously stated intention to confirm Syring's award. Based upon Richco's motion for review, the trial court ordered an evidentiary hearing for the purpose of determining whether the award had been "procured by corruption and undue means."

At the hearing, business relationships between Syring and Parkside were disclosed. Syring's business association with Emil Abendroth dated back to the 1950's. At that time the connection was attenuated: Abendroth's

[1] Sec. 298.09, Stats., provides:

"298.09 Court confirmation award, time limit. At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in the next two sections. Notice in writing of the application shall be served upon the adverse party or his attorney 5 days before the hearing thereof."

company bid as a subcontractor on jobs managed by the company for which Syring then worked. On two occasions during 1973 and 1974 Associates and Syring's firm worked on the same construction project. The two did not have contracts with each other, but Associates' project captain provided some supervisory assistance to Syring's crew. Syring hired Associates to do design work on two small projects in 1974, one of which was not completed at the time of the arbitration. Associates and Syring's company bid on a few projects together between 1972 and 1974, but they were not awarded the contracts.

Syring also had connections with Attorney Gerald Rice who represented Parkside briefly in the proceedings. Attorney Rice had obtained an extension of time from the court for the filing of the arbitrator's report and had later filed the motion requesting confirmation of the arbitrator's report. Rice had drafted wills for Syring, had incorporated Syring's company, and had been retained to represent Syring in litigation. He was representing Syring on one matter pending at the time of the arbitration.

Syring also had a prior acquaintance with Marvin Hersh, the arbitrator appointed by Parkside. Syring first met Hersh in 1962 when both were members of a general contractors' group. Between 1968 and 1973, Syring was one of the contractors working on a hospital; Hersh was construction coordinator for the hospital from 1971 through the arbitration period, and in that capacity he supervised Syring's employees. Hersh testified that he saw Syring personally about once a week at the construction site.

Following the hearing, the court vacated the award "in all fairness and justice" because of the failure to disclose previous business and social contacts among the arbitrators and parties and because of the type of final award made by Syring. The court further ordered the

parties to return to arbitration. Parkside appeals from the order vacating the award. Richco requests review of the trial court's order requiring further arbitration.

Because the policy of this state is to foster arbitration as an alternative to litigation, arbitration awards are presumed to be valid. *Scherrer Constr. Co. v. Burlington Mem. Hosp.*, 64 Wis.2d 720, 735, 221 N.W.2d 855 (1974). An award will be set aside only upon a showing that one of the statutory grounds for vacatur exists. Sec. 298.10 (1), Stats., provides as follows:

"(1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:
"(a) Where the award was procured by corruption, fraud or undue means;
"(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;
"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;
"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

Invalidity of the award must be demonstrated by clear and convincing evidence. *Scherrer, supra* at 735; *Koepke v. E. Liethen Grain Co.*, 205 Wis. 75, 77–79, 236 N.W. 544 (1931).

## II.

Parkside contends that the trial court limited the scope of the evidentiary hearing on Richco's motion to vacate

the award to proof of the grounds contained in sec. 298.-10(1)(a), Stats., *i.e.*, that the award was procured by "corruption, fraud, or undue means." The trial court concluded that there was no corruption, fraud or intent to make a false award. Parkside asserts that there was no showing of undue means as that term has been defined by this court.[2] Since, argues Parkside, there was no evidence to justify vacating the award under sec. 298.10 (1)(a), Stats., "the sole ground upon which the evidentiary hearing was granted and to which it was confined," the award must be confirmed.

The trial court's decision and order do not specify upon which ground set forth in sec. 298.10, Stats., the court relied in vacating the award. However, the trial court's statement that there was no fraud, and the court's reference to undisclosed business and social contacts between Syring and the parties and the representatives of the parties to the arbitration, indicate that the trial court was relying on sec. 298.10(1)(b), which authorizes vacatur of an award where "there was evident partiality on the part of the arbitrators, or either of them."

Parkside contends that if the trial court in fact ordered vacatur on the basis of sec. 298.10(1)(b), the trial court's order should be reversed, or alternately, the order should be vacated and the cause remanded for a new evidentiary hearing on the issue of evident partiality

---

[2] "Undue means" includes *ex parte* contacts between the arbitrator and a party which are "inappropriate, unjustified or improper methods of procuring an arbitration award." *Manitowoc v. Manitowoc Police Department*, 70 Wis.2d 1006, 1019, 236 N.W.2d 231 (1975). There was no claim here that Parkside contacted Syring during the course of the arbitration in an attempt improperly to influence his award.

Parkside also asserts that sec. 298.10(1)(a), Stats., encompasses only actual fraud. This court has not previously ruled on this point. The view we take of the scope of the evidentiary hearing makes it unnecessary for us to decide the question.

because Parkside "reasonably relied to its substantial detriment" on the theory that the hearing would be limited to evidence tending to show "corruption, fraud, or undue means."

We do not agree with Parkside's contention that the evidentiary hearing was intended to exclude evidence regarding Syring's alleged partiality or that it excluded such evidence in fact. Richco's motion for review which prompted the evidentiary hearing was accompanied by an affidavit stating Richco's contention that the award "was procured by corruption, undue means and evident partiality of the arbitrators" and Richco's belief "that an evidentiary hearing would clearly present and show to the court that such corruption, undue means and wrongdoing did in fact exist . . . ." In a hearing held to determine the ground rules for the subsequent evidentiary hearing, the court commented that it would cut off the presentation of evidence not pertinent to "fraud, misrepresentation and undue means." Neither Richco's nor the court's language can fairly be construed as an attempt to limit the hearing to the grounds for vacation of an award contained in sec. 298.10(1)(a).[3] There was no attempt to use the statutory language with precision. The term "misrepresentation" is not used in sec. 298.10, Stats., at all. In the course of the pretrial hearing, the court noted that the hearing was on "undue influence, meaning not undue means, but undue influence of individuals upon people making decisions." That language is broad enough to encompass influence arising from interactions between an arbitrator and a party or a party's representative. We conclude that the trial court intended that evidence concerning undisclosed relationships between the arbitrators and the parties be submitted in

---

[3] The term "corruption" is used in both subsections (a) and (b) of the statute.

order to allow the court to determine whether the award was procured by fraud, corruption, or undue means or whether there was evident partiality or corruption on the part of an arbitrator.

Assuming, *arguendo,* that the trial court's original intention was to limit the scope of the evidentiary hearing to evidence tending to show fraud, corruption, or undue means, we nonetheless conclude that in actual scope, the hearing encompassed the ground of "evident partiality." Our review of the record does not support Parkside's claim that it suffered prejudice due to its alleged understanding that the hearing was limited to evidence which would show fraud, corruption, or undue means. All of the arbitrators and parties among whom undisclosed relationships were said to exist testified. The scope of examination was broad, eliciting the details of their business and social contacts. No effort was made by Richco, Parkside, or the trial court to exclude testimony tending to prove or disprove the elements relevant to vacatur under sec. 298.10 (1) (b). In light of our conclusion that the evidence adduced at the hearing was sufficient to warrant vacatur under sec. 298.10 (1) (b), we conclude that a new evidentiary hearing on the issue of partiality would serve no purpose.

### III.

Before we can turn to a consideration of whether vacatur was warranted under sec. 298.10 (1) (b), Stats., it is necessary that we construe the phrase "evident partiality" as used in this section.

Three basic considerations guide our construction. First we must look at the thrust of the statute in which the phrase appears. Section 298.10 (1), Stats., provides, in essence, that upon application of any party, the trial court "must make an order vacating" an arbitration

award where that award was not made by a disinterested arbitrator upon consideration of all of the relevant evidence. It is within the context of this clear legislative intent to require disinterested arbitration that the phrase "evident partiality" must initially be read.[4]

"Evident partiality" must also be read to conform to the expectation of reasonable parties to an arbitration proceeding that the award will be made by a disinterested arbitrator. This was clearly the expectation in the case at bar. The stipulation of the parties, which in effect granted sole decision-making power to the third arbitrator, referred to the decision maker as the "third, independent arbitrator." It should be noted that since two of the arbitrators in the case at bar were effectively, and by design, representatives of the respective parties, our construction of "evident partiality" should only be read to apply to the arbitrator intended by the parties to be neutral.

Because arbitration is a contractual arrangement, albeit endorsed and implemented by statute, our construction of "evident partiality" should also be structured to enhance the parties' opportunity to assess an arbitrator's qualifications with a minimum of judicial interference.

In light of the foregoing considerations, we do not consider sufficient a definition which restricts "evident partiality" to proof that an arbitrator has an interest in the outcome of the proceeding in which he has made an award. Neither do we find sufficient a definition which restricts "evident partiality" to proof that a relationship exists between the arbitrator and a party or a party's

---

[4] As early as 1902 this court adopted the rule that an award will be voided if an arbitrator has a personal interest in the subject matter of the dispute. *Frankfurth v. Steinmeyer*, 113 Wis. 195, 200, 89 N.W. 148 (1902).

representatives which is so substantial that the arbitrator's interest in the outcome may be inferred.

In order to further the intent of the legislature, the expectation of the parties, and the parties' opportunity to make reasonable assessment of an arbitrator's ability, we hold that the neutral arbitrator must disclose at the outset the relationships or transactions he or she has had with the parties or with the representatives of the parties to the arbitration proceeding. The neutral arbitrator must also disclose any facts which might indicate to a reasonable person that the arbitrator has or might reasonably be supposed to have an interest in the outcome of the arbitration, or which may reasonably support an inference of or the appearance of the existence of bias, prejudice, partiality, or the absence of impartiality.[5]

---

[5] Several commentators who have assessed the role of disclosure in the arbitration process support our conclusion:

"The arbitrator must disclose any circumstance that might give rise to doubts in his impartiality. He should reveal whether he, his firm, or his employer has had in the past or currently has any relationship whatsoever with one of the parties. Even a personal relationship with the lawyer or law firm representing one party must be disclosed. The arbitrator may have been of good faith and there may be no proof that his actions were prejudicial to the interests of a party. However, the mere fact that he did not disclose a possible bias and thus prevented a party from investigating the relationship will be a sufficient reason to nullify the award." Domke, *Commercial Arbitration* 72 (1965).

". . . [T]he disqualifying nature of the relationship is not so significant as the failure adequately to disclose the relationship so that the parties and the [American Arbitration Association] could determine whether it was disqualifying." Goldberg, *A Lawyer's Guide to Commercial Arbitration* 39 (1977).

The Commercial Arbitration Rules of the American Arbitration Association (as amended and in effect November 1, 1973) provide as follows as to disclosure:

"Section 18. DISCLOSURE AND CHALLENGE PROCEDURE —A person appointed as neutral Arbitrator shall disclose to the AAA any circumstances likely to affect his impartiality, including any bias or any financial or personal interest in the result of the

Thus we construe "evident partiality" to include proof of a neutral arbitrator's failure to disclose these facts and relationships.

In requiring full disclosure we are in accord with the United States Supreme Court's construction of the provisions of the federal arbitration act which are substantially similar to sec. 298.10(1)(b).[6] In *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145 (1968), reh. denied 393 U.S. 1112 (1969), as in the case at bar, each party selected an arbitrator and these two selected an ostensibly neutral third arbitrator. After the award was entered, one party learned that the neutral arbitrator, an engineering consultant, had business transactions with the other party to the arbitration. Although the three arbitrators concurred in the award, and there was no charge of actual fraud or bias,[7] the Supreme Court

arbitration or any past or present relationship with the parties or their counsel. Upon receipt of such information from such Arbitrator or other source, the AAA shall communicate such information to the parties, and, if it deems it appropriate to do so, to the Arbitrator and others. Thereafter, the AAA shall determine whether the Arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive."

[6] "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

". . . ." 9 U.S.C. sec. 10 quoted in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 147, n. 1 (1968), reh. denied 393 U.S. 1112 (1969).

*See also* Section 12 of the Uniform Arbitration Law (7 Uniform Laws Annotated) which provides that "upon application of a party, the court shall vacate an award where . . . there was evident partiality by an arbitrator appointed as a neutral . . . ."

[7] In *Commonwealth Coatings* the district court conclusion, affirmed by the court of appeals, was that "the arbitrators conducted

vacated the award concluding that the "neutral arbitrator" is required to "disclose to the parties any dealings that might create an impression of possible bias." 393 U.S. at 149. The rule set forth by the Supreme Court for arbitrators is similar to the one for judges: "Any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." 393 U.S. at 150.

Arbitration will be expedited and judicial intervention minimized by the simple requirement that a neutral arbitrator make full disclosure to the parties. A rule of full disclosure strikes the proper balance between ensuring finality of arbitration awards and ensuring justice and fairness (and the appearance of justice and fairness) in arbitration proceedings. It permits the fully informed parties to balance the need for impartial arbitrators and the need for experienced, knowledgeable arbitrators when they select the arbitration panel.

On numerous occasions courts have struggled to draw the often imperceptible line between fact situations which do and do not support an inference of bias sufficient to justify vacatur.[8] Our adoption of a rule requiring full disclosure should help eliminate litigation in which the court is asked to determine whether the relationships were casual, innocent, superficial, isolated, insignificant or inconsequential so that there is no partiality or appearance of partiality or whether the relationships were substantial so that there is the presumption of or appearance of partiality. The parties—not the courts—should

---

fair, impartial hearings." We do not read the majority opinion as questioning this finding. 393 U.S. 151, 153.

[8] For examples of the distinctions drawn by the New York Courts *see* cases cited in *J. P. Stevens & Co., Inc. v. Rytex Corp.*, 34 N.Y.2d 123, 312 N.E.2d 466 (1974). *See generally* Annot., *Setting Aside Arbitration Award on Ground of Interest or Bias of Arbitrators*, 56 ALR3d 697 (1974).

gauge the arbitrator's conscious or unconscious predilection to favor one of the parties because of the arbitrator's own interests.

As Mr. Justice White stated in his concurring opinion in *Commonwealth Coatings*

"The arbitration process functions best when an amicable and trusting atmosphere is preserved and there is voluntary compliance with the decree, without need for judicial enforcement. This end is best served by establishing an atmosphere of frankness at the outset, through disclosure by the arbitrator of any financial transactions which he has had or is negotiating with either of the parties. In many cases the arbitrator might believe the business relationship to be so insubstantial that to make a point of revealing it would suggest he is indeed easily swayed, and perhaps a partisan of that party. But if the law requires the disclosure, no such imputation can arise. And it is far better that the relationship be disclosed at the outset, when the parties are free to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity, than to have the relationship come to light after the arbitration, when a suspicious or disgruntled party can seize on it as a pretext for invalidating the award. The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are far better informed of the prevailing ethical standards and reputations within their business." 393 U.S. at 151 (note omitted).

We do not intend to require an arbitrator to reveal every facet of his or her life. Nevertheless, the burden falls on the arbitrator to search his or her memory and records to make disclosure, erring on the side of more rather than less disclosure. If arbitrators follow the rule of disclosure herein set forth, the number of cases in which "evident partiality" is litigated should be small.

We now turn to a consideration of whether the trial court properly vacated the award under sec. 298.10(1)

(b), Stats., in the case at bar. When there is nondisclosure at the outset of arbitration, the test for vacatur on the ground of evident partiality is whether the reasonable person, as a party to the arbitration proceeding, upon being advised of the undisclosed matters, would have such doubts regarding the prospective arbitrator's impartiality that he or she would investigate further, would demand that the arbitration be conducted on terms which would provide checks on the arbitrator's exercise of discretion, or would take other protective measures to assure an impartial arbitration and award.

Using this test, we affirm the trial court's determination that the award must be vacated because of Syring's undisclosed relationships with Emil Abendroth, Associates, and with Arbitrator Marvin Hersh. Concern over these relationships is not merely the pretext of a disgruntled party to invalidate the award. A reasonable person, having agreed to inclusion on the panel of a "third, independent arbitrator" and having agreed to be bound by the decision of this independent arbitrator, would have doubts regarding Syring's impartiality. The reasonable person would have made inquiry of Syring's relationships with Parkside to evaluate their significance and Syring's potential bias in favor of Parkside because of his expectation of future business dealings with Parkside, Associates, or their representatives. After investigation, a reasonable person might accept Syring as an arbitrator; the value of his expertise in the subject matter might outweigh the possibility of his being partial. Or the reasonable person might accept Syring as an arbitrator on the condition that the parties change the terms of the arbitration to reduce Syring's power. In any event these are matters that the parties to the arbitration should be given an opportunity to determine.

Syring's dealings with Attorney Rice, which he failed to reveal, might also be a ground for vacatur had the

objection not been waived.[9] Richco's attorney knew of the relationship between Attorney Rice and Syring ten days before Syring's report and award were submitted. However, Richco decided not to advise the court until after the award was made. "Where a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground. His silence constitutes a waiver of the objection." *Cook Industries, Inc. v. C. Itoh & Co. (America) Inc.*, 449 F.2d 106 (2d Cir. 1971), cert. denied 405 U.S. 921 (1972).[10]

The trial court based its vacatur of the award not only on the undisclosed relationships but also on "the type of final award" Syring made. The trial court did not clarify what it meant by this latter phrase. In view of our decision that vacatur is proper because of "evident partiality," we need not discuss whether vacatur is justified on the basis of the type of the award.

## IV.

Richco has requested review of the portion of the court's order which directs the parties to return to arbitration. Richco argues that the whole arbitration proce-

[9] Regarding disqualification of an arbitrator based on a relationship with an attorney for one of the parties, *see San Luis Obispo Bay Properties, Inc. v. Pacific Gas and Electric Co.*, 28 Cal. App.3d 556, 104 Cal. Rptr. 733, 742 (1972); *Johnston v. Security Ins. Co. of Hartford*, 6 Cal. App3d 839, 86 Cal. Rptr. 133, 136 (1970); Domke, *Commercial Arbitration* 72 (1965).

[10] *See Travelers Ins. Co. v. Pierce Engine Co.*, 141 Wis. 103, 109, 123 N.W. 643 (1909); *Frankfurth v. Steinmeyer*, 113 Wis. 195, 201, 89 N.W. 148 (1902); *Kane v. Fond du Lac*, 40 Wis. 495, 501 (1876); Rothstein, *Vacation of Awards for Fraud, Bias, Misconduct and Partiality*, 10 Vand. L. Rev. 813, 823 (1957); Domke, *The Law and Practice of Commercial Arbitration* 213 (1968).

dure should be abandoned because it is inherently unfair. We need not consider the alleged unfairness of a procedure to which the parties agreed, because the trial court cannot under the circumstances of this case require the parties to return to arbitration. The statute grants the court power to direct a rehearing by the arbitrators only if "the time agreed upon for arbitration by the parties has not expired." Sec. 298.10(2), Stats. provides as follows:

"Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

The original stipulation between Richco and Parkside required that the arbitrators report to the court on or before October 6, 1974. The date was later extended to October 28, 1974. Syring's report and award were submitted October 25, 1974. The trial court's order which vacated the award and directed a return to arbitration was issued February 23, 1976. The time within which the arbitrators' report was required to be made had expired when the court order to return to arbitration was issued. Thus unless the parties are willing to enter into another arbitration agreement, the arbitration agreement has terminated and they must be permitted to proceed to litigation of their dispute.

*By the Court.*—Order modified to eliminate the requirement that the parties return to arbitration and, as modified, affirmed.