474 A.2d 959

**Stanley E. HARTMAN, et ux.**

v.

**Neill S. COOPER, et al.**

**No. 1202, Sept. Term 1983.**

Court of Special Appeals of Maryland.

May 11, 1984.

156

Stuart M. Salsbury, Baltimore, with whom were Max R. Israelson and Israelson, Jackson & Salsbury, P.A., Baltimore, on brief, for appellants.

George J. Goldsborough, Jr., Easton, with whom were Goldsborough & Tolley, Easton, on brief, for appellees.

Argued before GILBERT, C.J., and LISS and GETTY, JJ.

LISS, Judge.

This is an appeal by Stanley E. Hartman and Thelma J. Hartman, his wife, appellants, from a verdict returned by a jury in the Circuit Court for Anne Arundel County in favor of Neill S. Cooper, M.D., Robert Ellis, M.D., Allan G. Egloff, M.D. and Neill S. Cooper, M.D., P.A., the appellees herein, in a medical malpractice case. This case arises from an orthopedic injury sustained by appellant Stanley Hartman. On February 18, 1978, Hartman fell in the driveway of his home at approximately 7:30 a.m., sustaining a comminuted subtrochanteric fracture of his right hip. He was taken to Anne Arundel General Hospital where he was treated by appellee Neill S. Cooper. The alleged malpractice in this case arises not from the original treatment and surgery performed by Dr. Cooper, but from followup care after Hartman's discharge from the hospital. During that time Hartman developed a serious bone infection, known as osteomyelitis.

Hartman alleges that Dr. Cooper failed to diagnose and treat the osteomyelitis and that that failure, which permitted the osteomyelitis to develop unchecked, led to a non-union of the fracture, six subsequent surgical procedures, six and a half months of hospitalization, a shortening of Hartman's right leg by approximately two to two and a half inches, a severe limp and the concomitant pain, suffering and mental anguish that accompanies such a catastrophic occurrence.

The case was first filed on February 11, 1981, before the Health Claims Arbitration (HCA) office of Maryland under

the terms of the Health Claims Arbitration Act, Maryland Code (1974, 1984 Repl.Vol.) Courts & Judicial Proceedings Article, Subtitle 2A. A panel was selected to hear the dispute pursuant to the panel selections procedures set out in COMAR 01.03.01.07. That procedure provides for three categories of eligible panel members, *i.e.*, attorneys, health care providers and members of the general public. The regulations require that in each case the director of HCA prepare a list of fifteen prospective panelists from which the final panel of three members, one from each category, is selected. Each prospective panelist is required to complete a panel data sheet containing questions concerning the panelist's background and other questions relevant to the prospective panelist's possible bias. The list of prospective panelists and the completed data sheets are then supplied to the litigants' attorneys so that they may have the opportunity to object for cause to the inclusion of any person on the list. In this case, on the basis of the information supplied, no objection was made to any panelist. Dr. William H.B. Howard was selected as the health care provider representative.

The case was heard before the HCA panel on June 28 through June 30, 1982 and on July 7, 1982 the HCA Board reached a unanimous decision in favor of the health care providers.

Shortly thereafter, appellants discovered that Dr. Howard had failed to disclose on his data sheet information relevant to his possible bias, which, if known to appellants might have resulted in his disqualification as a panel member for cause. Prior to his being selected to serve on the panel, Dr. Howard had been asked on his data sheet by Question No. 2, "Have you ever been sued or had a claim brought against you for medical malpractice? If so, give details." Dr. Howard's answer to this question was "No."

Question No. 3 on the data sheet asked, "Have you ever testified as a medical witness in a judicial or administrative proceeding? If so, give details." Dr. Howard answered,

"Yes, in a compensation hearing in 1968 in Harrisburg, Pennsylvania." Appellants argued that relying on the answers supplied by Dr. Howard they accepted him on the panel which heard this case.

Appellants thereupon filed a motion to vacate the health panel's decision and to nullify its conclusions in the Circuit Court for Anne Arundel County. In the course of the hearing on that motion appellants offered testimony that the answer supplied to Question No. 2 was incorrect in that investigation had disclosed that Dr. Howard had been sued individually in the case of *Melissa S. Lachica, et al. v. William H.B. Howard, M.D., et al.,* HCA No. 79–165. That case was set for trial during the week of July 5, 1982, one week after Dr. Howard sat as a panel member in the case here under consideration. Further investigation disclosed that Dr. Howard's answer to Question No. 3 was also incorrect in that it was discovered that Dr. Howard had been deposed as a witness for the defense in two other medical malpractice cases.

In response to the motion to vacate the panel's determination of the issues in the case submitted to the HCA panel, Dr. Howard filed an affidavit in which he conceded that his answers to the two disputed questions were erroneous but attempted to explain the incorrect answers for the following reasons. He said in his affidavit:

*Question 2:* The said Panel Data Sheet, which I filed with the intention of volunteering to perform a public service in response to a stated need for health care provider panelists, was filled in by my secretary on her typewriter in complete good faith, and answered in the negative based upon the assumption that the inquiry was addressed to my private practice as a surgeon. I have never been sued as a private practitioner. The *Lachica* case [HCA No. 79–165] was one in which we perceived that it was the hospital for whom I was then an employee that was the actual defendant being sued, and that I was involved only as an employee. Perhaps the distinction is not a valid one as a legal proposition, but to us as

non-lawyers it seemed both reasonable and the intended distinction. I simply did not perceive the "you" in the subject question to encompass the hospital-based suit. The omission was entirely inadvertent and certainly not intended to "conceal" anything.

*Question 3:* Despite what the Claimant's Memorandum argues, this question was correctly answered. I have never appeared as a witness in *any* courtroom or in any HCA arbitration hearing. I gave a deposition once, perhaps twice but I think only once, which I did not, and do not, understand to be the equivalent of "testifying as a medical witness in a judicial or administrative proceeding." I thought that a deposition was an information-gathering discovery device which did not make me a "witness"—certainly not in the sense the question seems to infer. Further, in that same deposition I was asked if I would consent to taking a plaintiff's case—and testify for a plaintiff—and I responded that I *would* do so in an appropriate case.

*Question 4.* In the instant case [*Hartman v. Cooper*, HCA No. 81–48] I assert unequivocally that I had no bias whatsoever for or against either party. Furthermore, the decision of the panel was unanimous [when only a majority vote is required] and that result was reached without consultation or discussion with me. I did or said nothing to influence my co-panelists, nor was it necessary to do so to achieve a decision. Our vote was taken without discussion although we each stated our reasons for reaching the same result. Each reason, or perspective, was different in that we each found different evidence to be persuasive.

The trial judge denied the motion to vacate, stating:

Plaintiffs next allege that Dr. Howard falsely or fraudulently misrepresented his status as a neutral arbitrator. Upon review of all of the documents submitted by the parties, the Court finds no evidence that Dr. Howard's actions were fraudulent or corrupt. Dr. Howard's affidavit sets forth plausible explanations as to why his answers did not reflect his limited participation in malprac-

tice cases. The Court does not find any evidence that Dr. Howard's omissions were intended to pervert the truth or intended to induce any detrimental reliance by either party. The Court thus finds that this allegation fails to set forth a valid reason to vacate the award of the Panel.

In answer to appellant's additional complaint that Dr. Howard as a member of the panel was evidently partial and that the HCA panel award should have been vacated, the trial judge, in denying the appellant's contention, said:

> Lastly, Plaintiffs allege that Dr. Howard is so evidently partial toward doctors in malpractice cases, that the award must be vacated. In the few Maryland cases which discuss an arbitrator's evident partiality, the courts focus upon the ongoing relationships between the arbitrator and one of the parties. *McKinney Drilling Company v. Mach I Limited Partnership*, 32 Md.App. 205 [359 A.2d 100] (1976), and *Lewatowski v. Ullsperger*, Law No. 133/308/107029 (Circuit Court for Baltimore County, November 4, 1981). In the instant case, there is no evidence of any relationship between Dr. Howard and either of the parties. Absent a showing of the clear bias of a relationship between an arbitrator and a claimant, this Court fails to find any other factors in the instant case which would necessitate vacation of an award based upon partiality. Partiality is defined as bias, a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction. (Black's Law Dictionary, Fourth Edition and Webster's New International Dictionary, Second Edition). To warrant vacation of the award, such bias must be clear, convincing, or conclusive. The mere fact that a doctor has given a deposition in a malpractice case or has been sued in his capacity as an employee of a hospital is not clear or conclusive evidence of partiality. By the very nature of their training, experience and professional relationships, doctors, as well as attorneys, judges or any segment of the population, are likely to have particular sets of opinions or beliefs. Such opinions are not sufficient, absent

other evidence, to prove bias or partiality significant enough to prevent the individual from rendering a fair and open-minded decision.

Appellant's motion for reconsideration of the motion to vacate subsequently was denied. Trial before a jury then began and over objection the trial court instructed the jury on the presumption that the finding of the HCA panel was *prima facie* correct. The jury returned a verdict in favor of the appellees and it is from their judgment that this appeal was filed. The issues to be determined by this proceeding are:

1. Did the trial court err in refusing to vacate a Health Claims Arbitration panel determination in favor of defendant physicians where the physician member of the panel failed to disclose required information indicative of possible/potential bias?

2. Did the trial court err in refusing to permit presentation to the jury of evidence concerning the possible bias of the physician member of the Health Claims Arbitration panel offered to rebut the presumption of correctness of the panel's determination in favor of defendant physicians?

1.

The Court of Appeals, in *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57 (1978), upheld the constitutionality of the health claims arbitration process and indicated the standards against which procedural issues were to be tested. The Court said:

In 1976 the Maryland General Assembly passed legislation, as have many other state legislatures, substantially altering the manner in which claims of medical malpractice by patients against physicians, hospitals, and other "health care providers" may be judicially resolved. In general terms, the effect of this State's Health Care Malpractice Claims statute, Md.Code (1974, 1977 Cum. Supp.), §§ 3-2A01 to 3-2A09 of the Courts Article (the Act), is to require the submission of certain of such

claims to an arbitration panel for initial ascertainment of liability and damages before resort may be had to a court of law for final determination. [Footnote deleted]. [*Id.,* at 277, 385 A.2d 57].

In *Johnson,* the Court examined the procedure for selection of the three members of the arbitration panel and especially the selection of the health care provider (usually a physician) member. The procedure is summarized as follows:

The director of the Arbitration Office delivers to the parties a list of fifteen potential arbitrators (five from each of the three categories) chosen at random from lists which the director prepares and maintains, §§ 3–2A04(b) & 3–2A03(c); the latter lists must include those persons on the American Arbitration Association list of arbitrators who are willing to serve. § 3–2A03(c). *The parties have an opportunity to object for cause to the inclusion of any arbitrator on the list of fifteen;* the claimant and the health care provider may also each peremptorily strike two names in each category, § 3–2A04(c), and the director then selects, from the lists returned to him, the first mutually agreeable person in each category. § 3–2A04(d). It only remains to add that the parties may, if they choose, agree in writing upon a single arbitrator and so advise the director. § 3–2A04(e). [Emphasis supplied; footnote deleted]. [*Id.,* at 285, 385 A.2d 57].

\* \* \* \* \* \*

The Act requires the director of the Health Claims Arbitration Office, who is responsible for preparation of a list of qualified persons willing to serve as arbitrators, § 3–2A03(c), to assure himself that persons on the randomly chosen list delivered to the parties have no personal or economic relationship with either party, § 3–2A04(b); it allows a party to object, and state reasons for doing so, to the inclusion of any arbitrator, and if the director finds there is a reasonable basis for the objection it requires him to replace the name of that arbitrator with another, § 3–2A04(c); it allows a party to strike, without reason,

two of the five potential arbitrators in each category (physicians, attorneys, and general public), § 3–2A04(c); *see* § 3–2A04(b); it requires the director to include a biographical statement for each of the potential arbitrators on the list delivered to the parties, § 3–2A04(b); and finally, *it permits the award to be vacated by the trial judge on the ground, among others, of "evident partiality by an arbitrator," in which event the case is tried as if there had been no award.* § 2A06(c); *see* Md.Code (1974), § 3–224(b)(2) of the Courts Article. [Emphasis supplied]. [*Id.,* at 296–97, 385 A.2d 57].

The trial court, in denying appellant's motion to vacate the award of the arbitration panel, based its decision on its conclusion that Dr. Howard did not intentionally give false or fraudulent information on the panel data sheet furnished by the health representative to appellant.

The Health Claims Act looks to the Maryland Arbitration Act Courts Article § 3–224(b)(2) standard of evident partiality and misconduct as the basis for vacating an award. That section reads in pertinent part:

The court shall vacate an award if: there was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party....

We perceive a difference in the approach by various courts on the issue of vacating an award where the attack is on the substance of the award itself and when the issue is the partiality of the arbitrators. In the latter instance only *evident* partiality or misconduct need be demonstrated without reference to or evaluation of actual bias or prejudice. The leading case on the question of evident partiality is *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). In that case, one of the arbitrators and the prime contractor in the arbitration had sporadic dealings not connected with the matter before the arbitration panel, but amounting to some $12,000 in fees paid to the arbitrator over a period of four

years prior to the arbitration. This fact was not known to the other party involved in the arbitration proceedings. In setting aside a unanimous award, even though there was no finding of actual fraud or bias, Justice Black construed the language of the United States Arbitration Act (whose provisions on the vacating of awards parallel that of the Maryland Act) to require not just any arbitration but an impartial one. [393 U.S. at 147, 89 S.Ct. at 338]. Justice Black noted:

This rule of arbitration and this canon of judicial ethics rests on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid *even the appearance of bias.* We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another. [Emphasis added]. [*Id.,* at 150, 89 S.Ct. at 340].

Following the decision in *Commonwealth Coatings, supra,* the Supreme Court of Wisconsin in *Richco Structures v. Parkside Village, Inc.,* 82 Wis.2d 547, 263 N.W.2d 204 (1978) expanded upon the definition of evident partiality when viewed in the arbitration setting. Determining that evident partiality must be held to conform with the expectations of reasonable parties to an arbitration proceeding that the award will be made by a disinterested arbitrator, the court reasoned that evident partiality included proof of a neutral arbitrator's mere failure to disclose facts and relationships which may *create an appearance* of bias:

In order to further the intent of the legislature, the expectation of the parties, and the parties' opportunity to make reasonable assessment of an arbitrator's ability, we hold that the neutral arbitrator must disclose at the outset the relationships or transactions he or she has had with the parties or with the representatives of the parties to the arbitration proceeding. The neutral arbitrator must also disclose any facts which might indicate to a reasonable person that the arbitrator has or might reasonably be supposed to have an interest in the outcome of

the arbitration, or which may reasonably support an inference of or the appearance of the existence of bias, prejudice, partiality, or the absence of impartiality. Thus we construe "evident partiality" to include proof of a neutral arbitrator's failure to disclose these facts and relationships. [Footnote omitted]. [263 N.W.2d at 211].

On numerous occasions courts have struggled to draw the often imperceptible line between fact situations which do and do not support an inference of bias sufficient to justify vacatur. Our adoption of a rule requiring full disclosure should help eliminate litigation in which the court is asked to determine whether the relationships were casual, innocent, superficial, isolated, insignificant or inconsequential so that there is no partiality or appearance of partiality or whether the relationships were substantial so that there is the presumption of or appearance of partiality. The parties—not the courts—should gauge the arbitrator's conscious or unconscious predilection to favor one of the parties because of the arbitrator's own interests. [Footnote omitted]. [263 N.W.2d at 212].

When there is nondisclosure at the outset of arbitration, the test for vacatur on the ground of evident partiality is whether the reasonable person, as a party to the arbitration proceeding, upon being advised of the undisclosed matters, would have such doubts regarding the prospective arbitrator's impartiality that he or she would investigate further, would demand that the arbitration be conducted on terms which would provide checks on the arbitrator's exercise of discretion, or would take other protective measures to assure an impartial arbitration and award. [263 N.W.2d at 313].

 We note that the elaborate provisions set up by the Health Claims Arbitration Act presuppose that the information furnished by prospective panel members shall be sufficiently accurate to advise the parties of the existence of any facts which might serve as a basis for objecting to the inclusion of any prospective panelist in a hearing panel. This requirement is even more crucial when we recognize

that the act provides no opportunity for either oral or written *voir dire.* We conclude that the failure of Dr. Howard to disclose in his answers supplied on his data sheet that there was a pending medical malpractice suit against him scheduled for trial one week after he was scheduled to sit on the panel in this case constituted "evident partiality." The further inaccurate or incomplete answer to Question No. 3 of the data sheet concerning Dr. Howard's ever having testified as a medical witness in a judicial or administrative proceeding was further evidence of "evident partiality" as defined by the authorities we have cited. The appellant was entitled to the correct information in deciding whether to exercise his right to object to Dr. Howard serving as a panelist for cause or whether to make further inquiry of the panelist or of the Director.

The failure to supply the information discovered by accident after the award of the panel reasonably supported an inference of or the appearance of the existence of bias, prejudice or partiality or absence of impartiality.

We have previously held that the failure to disclose circumstances likely to create an appearance of bias or evident partiality requires the vacation of an arbitration award. In *McKinney Drilling Co. v. Mach I Ltd Partnership,* 32 Md.App. 205, 359 A.2d 100 (1976), we discussed Md.Code Cts. & Jud.Proc. § 3–2A–06(c) which provides that a party may by preliminary motion seek a vacation of an improper award because of the grounds we have heretofore cited found in § 3–224(b)(1) *et seq.* which provides that the motion shall be determined by the court without a jury prior to trial.

The United States Arbitration Act and the Uniform Arbitration Act, under which *McKinney* was decided, have become the cornerstones of arbitration in this country. The Uniform Arbitration Act was adopted by Maryland in 1965 and appears in its current form in Md.Code, (1974, 1984 Repl.Vol.) Cts & Jud.Proc., §§ 3–201 to 3–234. *See Freder-*

*ick Contractors, Inc. v. Bel Pre Medical Center, Inc.,* 274 Md. 307, 334 A.2d 526 (1975).

█ To vacate an award on the basis of evident partiality under these acts, a showing of actual bias or proof of improper conduct is not necessary; all that is required is an appearance of possible bias. *See generally Annot.,* Setting Aside Arbitration Award On Ground of Interest or Bias of Arbitrator, 56 A.L.R.3d 697 (1974), 5 Am.Jur.2d, Arbitration and Award, § 181.

In the medical malpractice context, it has also been held that failure to disclose a relationship or a possible bias in a medical arbitration proceeding is sufficient to require vacation of an award. In *Wheeler v. St. Joseph's Hospital,* 63 Cal.App.3d 345, 133 Cal.Rptr. 775 (1976), the medical member of an arbitration panel failed to disclose his relationship with one of the law firms involved in the arbitration. The court vacated the unanimous panel decision even though there was no evidence that the medical member of the panel was guilty of any wrongdoing or that he was in fact biased or influenced by reason of the relationship. The court concluded that the relationship manifestly gave rise to "an impression of possible bias" and that the failure to disclose it mandated the vacating of the award. "If arbitration of medical malpractice claims is to be encouraged," the court stated, "as we believe it should, any appearance of possible bias on the part of an arbitrator should be fully disclosed to the parties." [*Id.,* at 793].

█ Appellees contend that absent proof of actual bias on the part of Dr. Howard, that appellant's cause must fail. We do not agree. The failure of Dr. Howard to make complete and accurate disclosure deprived the appellant of information which might have been grounds for the disqualification for cause of Dr. Howard as a panel member. In addition, the award as made by the panel, was admitted, under the provisions of § 3–2A–06(d), into evidence in the case tried before the jury in the Circuit Court for Anne Arundel County. The jury was instructed by the court, as

required, that the award was presumed to be correct and that the burden was on the party rejecting it to prove that it was not correct.

■ As we have found that the award made by the panel was tainted by "evident partiality" the admission of the award and the instruction as to the presumption of its correctness and the burden imposed on the appellant was clearly prejudicial.

JUDGMENT REVERSED, CASE REMANDED FOR TRIAL. COSTS TO BE PAID BY APPELLEES.